## BREWSTER vs. CLAMFIT.

1. *Mortgages to Secure Future Advances.*
   If *bona fide* and sufficiently definite are valid. When the amount intended to be secured is in its nature indeterminate, or where it may be easily ascertained outside of the mortgage, the failure to set it out, will not vitiate.

2. MORTGAGE; *Mis-description, correction, etc.*
   Where a tract of land is misdescribed in a mortgage or trust deed, the equity of the mortgagee or grantee to have it corrected is equal, and prior in point of time to that of a subsequent judgment creditor.

3. STAY OF EXECUTION: *Effect upon Judgment Lien.*
   The voluntary stay of execution by the judgment creditor, does not *destroy* the lien of the judgment.

APPEAL from *Crittenden* Circuit Court in Chancery.

Hon. L. L. MACK, Circuit Judge.

*Randolph*, for appellant.

*Adams, Contra.*

EAKIN, J.:

On the 18th of April, 1871, the complainant Brewster, recovered in the Crittenden Circuit Court, a judgment against Wm. Clamfit, for the sum of $3,992, and costs, in which judgment it is recited that plaintiffs thereupon "order a stay of execution herein for six months." This judgment was based upon a transcript of a Tennessee judgment rendered in the year 1865. There was execution upon the Arkansas judgment, and return of no property found. The greater part of it remains unpaid.

Complainant Brewster, brought this suit in the nature of a creditor's bill against defendants, Clamfit, J. C. Terry, and a number of other parties, holding title to, or claiming interest in divers tracts of land, in order to reach equitable interests of Clamfit in the different parcels, or to claim and enforce equities as a creditor, against vendees affected by fraud. In the progress of the suit the bill has been dismissed as to many of the parties and much of the lands. So far as it has been retained it charges:

That on the 24th day of September, 1868, said Clamfit conveyed by trust deed to O. P. Lyles, a quantity of lands in Crittenden County, of which he was the legal owner, together with the crop of cotton and corn growing thereon, with some personal property such as is usually found upon plantations. This deed recited that Clamfit was indebted to the firm of Price & Terry, in the sum of ——— dollars, "for cash advanced, supplies furnished, and for further sums of money to be advanced to and for said Clamfit, upon acceptances this day arranged and agreed upon," and to certain other parties

named in the deed "in various sums evidenced by judgments in the Circuit Court of Crittenden County, Arkansas; and which judgments after payment of the sums for labor on said place, and the sums so due to Price & Terry, are to be paid in equal annual installments, * * * as far as possible out of the proceeds of said crops to be shipped to Price & Terry." On default the trustee was authorized to sell all the property. Meanwhile the judgments mentioned were to remain in full force, with their liens reserved; and execution might issue for any balances the property might fail to pay. No sums were mentioned as due to any of the parties. With the exception of the account of Price & Terry, (which seems to have been intended to depend upon acceptances then agreed upon, *and* future advances) the amounts could have been ascertained by reference to the records of the Court.

It further appears from the bill and exhibits that the trustee afterwards, on the 13th of August, 1872, in pursuance of his powers, sold the lands and other property, and that they were purchased by J. C. Terry, for the sum of $13,000, which amount was credited upon the debt of Clamfit to Price & Terry, to which Terry had succeeded.

This deed of trust and these proceedings, are attacked by the bill as fraudulent for uncertainty, and as gotten up by collusion amongst Clamfit, Terry, and the other creditors named therein. Also, because personal property to be consumed in the use was to be left in possession of the vendor.

Further; it is alleged that on the 16th day of February, 1872, Clamfit conveyed to said Terry, a certain forty acre tract, reciting that it was intended to be included in the deed of trust, but had been misdescribed, and so left out; and which was also the "chosen and selected homestead" of said Clamfit; also an additional eighty acre tract, which it is not recited was intended to be conveyed in the deed of trust, but

together with the other, is described as the chosen and selected homestead. These tracts it is claimed, are subject to the judgment lien of complainant.

Pending the suit Wm. Clamfit died; his administrator and hiers were brought in, and together with all parties interested in the matters for which the bill was retained, answered:

The purport of the answer is in general to deny the fraud charged in the deed of trust, to show that the debts mentioned therein were *bona fide*; that in accordance with the intention of the parties, they have been taken up by Price & Terry, or by Terry, who succeeded to the business; and that these payments, together with future advances in accordance with the deed, amounted to more than was bid at the sale; that the mistake was properly corrected; that the land subsequently conveyed was a homestead, and the conveyance passed the property free of the lien of the judgment.

The cause was heard upon the pleadings, exhibits, admissions of counsel and evidence, whereupon the Chancellor denied the prayer of the bill regarding the lands and property contained in the deed of trust; and allowed the conveyance to stand with correction of the mistake as to the forty acre tract; but held the eighty acre tract, conveyed on the 16th of February, 1872, subject to the judgment lien, and ordered a sale of it for that purpose. From this decree Brewster appealed: and afterwards a cross appeal, for defendants, was granted here.

Mortgages for future advances, if *bona fide* and sufficiently definite, are valid. In this case, the deed of trust failed to specify the amounts then due, either to Price and Terry, or to any others of the creditors to be secured. In the case of Price & Terry that was not important, as the indebtedness, whether much or little, was to be mingled with future advances, in their nature indeterminate. The deed was sufficient to put

all persons, interested in the property, upon inquiry, and they might have ascertained the whole amount due Price & Terry at any time, by application to the firm. The other debts were judgments of the Circuit Court of Crittenden County, and easily ascertainable. It would have been better if the deed of trust had set out, at least approximately, the several amounts then due the several creditors; and the failure to do so, accompanied by marked *indicia* of fraud in other respects, might have been important. But the proof shows the entire *bona fides* of the whole transaction; and there is no uncertainty in the deed sufficient to vitiate it. No one seems, in any respect, to have been misled by it. As for the complainant, all his rights against Clamfit then rested upon the judgment of another State, concerning which we must presume the parties to the deed entirely ignorant.

The proof further shows that, at the time of the sale under the deed, defendant Terry, or the firm of Price & Terry, to the rights of which Terry had succeeded, had paid off all the other creditors secured, or nearly all, and that his account for these payments and advances, since the execution of the deed, amounted to a sum greater than that bid at the sale, and greater than the value of the prop-erty. As to the forty acre tract, which had been plainly misdescribed, the equity of the vendee or grantee in such cases, to have such a mistake corrected, is certainly equal, and prior in time to that of a judgment creditor, who neither acquires a specific lien by his judgment, nor advances any new consideration. His lien is general upon all the real estate of the defendant in the county, but upon such only as he has; and in the condition in which he then has it—subject to prior equities, until, by sale to a *bona fide* purchaser, for valuable consideration, said prior equities be lost. The deed to correct the error should more properly have been made to the trustee; but as it

was made to the chief beneficiary, who afterwards became the purchaser of all the lands, the same object was reached.

It is contended by counsel for Terry, that by the voluntary stay of the execution, the lien of the judgment was lost. We have examined the authorities cited on that point, and find that they do not go to the full extent of holding that a stay of execution *destroys* the lien. Whether or not a voluntary stay of an execution *suspends* the lien during the stay, it is not necessary here to decide, as in that time no intervening rights accrued to any one. Suffice it to say that the stay does not *destroy* the lien.

The eighty acre tract conveyed to Terry by deed of February 16th, 1872, which was not in the deed of trust, was properly found subject to the judgment lien. There is no proof that it ever had been used as a homestead, only that together with another forty acre tract, (which the plat would show to be nearly a mile away) it had been chosen and selected as such. The proof fails to show actual residence on either tract.

Let the decree be affirmed.